IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STEPHEN D. HAMILTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:07-0481 |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Knowles |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff Stephen D. Hamilton ("Plaintiff") Motion for Judgment on the Administrative Record ("Plaintiff's Motion") (Doc. No. 15) and supporting Memorandum (Doc. No. 17). Defendant Commissioner of Social Security ("Defendant") filed a Response (Doc. No. 20) to which Plaintiff filed a Reply (Doc. No. 21). Magistrate Judge Knowles issued a Report and Recommendation ("Report") that Plaintiff's Motion be denied and that the decision of the Administrative Law Judge ("ALJ") be affirmed (Doc. No. 24). Plaintiff filed Objections to the Report (Doc. No. 25). Upon review of the magistrate judge's Report and the reasons discussed herein, the Court **ADOPTS** the Report in its entirety and **DENIES** Plaintiff's Motion.

**I.    BACKGROUND**

   *A.    Procedural Background*

Plaintiff first filed an application for disability insurance benefits with the Social Security Administration ("SSA") on April 21, 2003 alleging disability since May 5, 1999 due to an impairment in his right lower extremity. (Tr. 45-46, 59). Plaintiff's application was denied

initially and also upon reconsideration. (Tr. 30-31, 32-33, 35-37, 39-40). Plaintiff filed a request for a hearing by an ALJ. (Tr. 41).

The hearing was held on September 23, 2005. (Tr. 358-377). After hearing testimony from Plaintiff and a Vocational Expert ("VE"), the ALJ issued a denial of benefits on April 10, 2006. (Tr. 14-22). Plaintiff filed a timely request for a review of the hearing. (Tr. 12). On March 27, 2007, the Appeals Council entered an order denying the request for review, rendering that decision the final decision of the Commissioner. (Tr. 6-8).

On May 2, 2007, Plaintiff filed this action to obtain judicial review of the ALJ's final decision. (Doc. No. 1). The Court has jurisdiction under 42 U.S.C. § 405(g). On April 1, 2009, Magistrate Judge Knowles recommended the ALJ's decision be affirmed and the Plaintiff's Motion be denied. (Doc. No. 24). Plaintiff asserts three (3) objections to the magistrate judge's findings. (Doc. No. 25). Specifically, Plaintiff contends that:

> (1) the ALJ did not comply with 20 C.F.R. § 404.1520a(e)(2) which requires the ALJ to utilize a special technique to evaluate the severity of a mental impairment and include in his decision specific findings as to the degree of limitation in each of the functional areas;
>
> (2) the ALJ did not consider specific factors when evaluating Plaintiff's credibility, per 20 C.F.R. § 404.1529 and SSR 96-7p; and
>
> (3) the magistrate judge did not set forth the facts or summarize the evidence in his Report.

(Doc. No. 25). The Court discusses the merits of Plaintiff's objections below.

    B.    *Factual Background*[1]

Plaintiff alleges disability commencing May 1, 1999. (Tr. 45). At that time, Plaintiff

---

[1] This summary of the evidence is based upon the Court's review of the full record and the Memorandum in Support of Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 17) with modifications.

was thirty seven years old. (Tr. 45). At the age of two, Plaintiff underwent an amputation of his right leg, in the area just above the ankle. (Tr. 366, 369). With a prosthesis, Plaintiff remained active and ambulatory until the late 1990s. (Id.). On April 16, 1998, Dr. Charles Kaelin performed a right knee arthroscopy, lateral meniscectomy, anterior cruciate ligament ("ACL") reconstruction, and tendon reconstruction on Plaintiff's right leg. (Tr. 152). Plaintiff seemed to respond well to this surgery and subsequent physical therapy. (Tr. 110-25, 140-44). Plaintiff returned to work for a short time after the surgery, but stopped working due to swelling in his knee in the area of his prosthesis. (Tr. 367).

In 2001 and 2002, Plaintiff reported pain when bearing weight in his lower right extremity amputation stump and that he was having trouble walking. (Tr. 138, 154). Both Dr. Kaelin and his associate Dr. White discussed treatment options with Plaintiff, including prosthesis modification and surgery to revise the distal stump. (Id.). In 2003, Plaintiff had a revision to the distal stump procedure done at St. Thomas Hospital, then began treatment with Dr. Baker, a pain specialist. (Tr. 184). Dr. Baker's impression was: "[w]ith a proper fitted prosthesis, I do not see any reason why [Plaintiff] should not be able to return to a high level of activity without significant pain." (Tr. 185). Dr. Baker treated Plaintiff from February 2003 until August 2003. (Tr. 177-85). Throughout the treatment Plaintiff had problems obtaining a proper-fitting prosthesis and complained of pain and depression. (Id.). Dr. Baker proscribed Neurontin (eventually stopped), Ultracet, and a Lidoderm patch for Plaintiff's pain. (Tr. 177-85 ). Dr. Baker also proscribed Prozac, which Plaintiff had taken in the past, for Plaintiff's complaints of depression and referred Plaintiff to a psychologist. (Tr. 183). Plaintiff reported that his experience with the psychologist was "terrible" and stopped taking the Prozac. (Tr.

182). Dr. Baker proscribed Zoloft for depression and anxiety and offered to refer Plaintiff to a different psychologist or psychiatrist. (Tr. 178-79). Plaintiff was not interested in seeking mental health services and discontinued the Zoloft, reporting to Dr. Baker that "he was stable." (Tr. 178).

In 2003 and 2004, Plaintiff presented to doctors complaining of chronic pain in his right leg and back pain, which his doctors attributed to changes in his gait as a result of his stump problems. (Tr. 270, 286, 289). In 2005, Plaintiff's primary care physician, Tammy Collins, referred Plaintiff to Dr. Neely for complaints of pain and swelling in the left knee and lower extremity. (Tr. 278). Dr. Neely's impression was left knee pain and he ordered an MRI. (Tr. 312). The MRI revealed tears of the anterior and posterior horns of the medial meniscus and possible ACL sprain. (Tr. 325). The record does not reflect any actions taken in response to this diagnosis. In 2003, Plaintiff complained of depression to Dr. Collins and was prescribed Effexor. (Tr. 289). After having the dose doubled and complaining of side effects, Plaintiff stopped all psychotropic medications in 2004. (Tr. 285). A physician concluded that "depression plays a significant role in this gentleman's chronic medical conditions" after Plaintiff presented at the emergency room with fever and dehydration in 2005 (Tr. 336-37).

Linda Blazina, Ph.D., performed a consultative psychological examination of Plaintiff on January 20, 2004. (Tr. 201-206). Blazina concluded, in part: "[Plaintiff's] ability to understand and remember does not appear significantly limited at this time. His ability to sustain concentration and persistence is felt to be mildly limited due to his psychological condition and his chronic pain." (Tr. 205). She also reported Plaintiff's "thought processes were somewhat tangential and in addition to being somewhat depressed, [Plaintiff] was irritable." (Id.).

Two capacity assessments of Plaintiff determined that he could lift twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight hour workday. (Tr. 194, 225). One DDS consultant found Plaintiff to have a limited ability to push and pull in his lower extremities while the other found no limitation beyond the identified weight restrictions. (Id.). Both found that Plaintiff should engage in only occasional climbing, stooping, kneeling, crouching, and crawling. (Tr. 195, 227). Both consultants determined that Plaintiff could engage in occasional balancing and had no manipulative, visual, communicative, or environmental limitations. (Id.).

The DDS psychological consultant determined Plaintiff's mental impairment to be not severe, with mild restriction on daily activities, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 207, 217). In Plaintiff's Residual Functional Capacity Assessment, the DDS consultant found Plaintiff's capacities not to be severely limited, except for the following, which were moderately limited: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to respond appropriately to changes in the work setting; and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 221-22).

At the September 23, 2005 hearing, Plaintiff testified that he last worked in 1999. (Tr. 363). He also testified to the pain and difficulties with his prosthesis that precipitated the doctors visits discussed *supra*., as well as his use of a cane, his inability to move around as well as in the past, and how he must compensate with his left leg. (Tr. 366-69). Plaintiff testified that he

could not work a sitting job because he has to hold his legs in front of him in an upright position or lie down in order to keep his legs from throbbing and swelling. (Tr. 370). Plaintiff said that he could stand for only an hour, and then only with the help of his cane, thus occupying his non-dominant arm. (Tr. 371-72). Plaintiff testified to his difficult adjustment to not working and having to receive help from his family. (Tr. 362). He also testified that his pain medication made him sleepy and that he slept during the day. (Tr. 363).

The VE classified Plaintiff's relevant past work experience as research technician, sedentary and unskilled, customer service representative, light and semiskilled, retail manager, light and skilled, and hotel manager, light and skilled. (Tr. 364-65). The ALJ posed a hypothetical to the VE of an individual with Plaintiff's vocational profile and the following limitations: mild limitation in the ability to sustain concentration and persistence; mild to moderate limitation in the ability to interact socially; ability to lift twenty pounds occasionally and ten pounds frequently; ability to work a full eight-hour day with a sit/stand option; inability to use foot controls on a regular basis; and the ability to occasionally climb, stoop, kneel, crouch, and crawl, but no ability to balance. (Tr. 374-75). The VE testified that such individual could perform Plaintiff's relevant past work. (Tr. 375). On cross examination, the VE testified that chronic, persistent pain without treatment would not allow such an individual to maintain employment. (Tr. 375-76). The VE also could not identify a significant number of jobs in the workplace that could be performed on a consistent basis by an individual who needed to elevate at least one lower extremity to waist level during much of the workday. (Tr. 376).

## II. STANDARD OF REVIEW

The Court's review of the portions of the magistrate's Report to which Plaintiff objects is

-6-

Case 3:07-cv-00481   Document 27   Filed 01/05/10   Page 6 of 11 PageID #: 110

*de novo*. 28 U.S.C. § 636(b) (2008). This review, though, is limited to a determination of whether substantial evidence exists in the record to support the Commissioner of Social Security's decision and whether the Commissioner committed any legal errors in the process of reaching that decision. Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2008). The reviewing court will uphold the decision of the Commissioner in adopting the ALJ's decision if it is supported by substantial evidence. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

The Sixth Circuit defines substantial evidence as "more than a mere scintilla of evidence, but less than a preponderance. Bell v. Comm'r of Soc. Sec., 105 F.3d 244, 245 (6th Cir. 1996) (citing Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The Court may not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. 745 F.2d at 387. Even if the evidence would support a different conclusion or the reviewing court could resolve factual issues differently, the decision of the ALJ must stand if "the evidence could reasonably support the conclusion reached." Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999); Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990).

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

> A. *The ALJ did not comply with 20 C.F.R. § 404.1520a(e)(2) which requires the ALJ to utilize a special technique to evaluate the severity of a mental impairment and include in his decision specific findings as to the degree of limitation in each of the functional areas*

Plaintiff argues that there is undisputed evidence that Plaintiff has a severe mental impairment and that the ALJ's decision to the contrary is not based on substantial evidence.

-7-

Case 3:07-cv-00481 Document 27 Filed 01/05/10 Page 7 of 11 PageID #: 111

Specifically Plaintiff argues that the ALJ did not use the technique required by, and include the specific findings as directed by, 20 C.F.R. § 404.1520a(e)(2).

When evaluating the severity of mental impairments for adults, the ALJ must follow the special technique determined by the Social Security Administration which helps to identify the need for additional evidence to determine the severity of the impairment, evaluate the functional consequences of the impairment on the claimant's ability to work, and present the agency's findings in a clear, concise, and consistent manner. See 20 C.F.R. § 404.1520a(a). The technique requires: an evaluation of "pertinent symptoms, signs, and laboratory findings to determine whether [plaintiff has] a medically determinable impairment." 20 C.F.R. § 404.1520a(b)(1). If it is determined that the plaintiff has a medically determinable impairment, "[the agency or ALJ] must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section." 20 C.F.R. § 404.1520a(b)(2). The Agency or ALJ must also rate the degree of function limitation resulting from the impairment according to the factors listed in paragraph (c), a "complex and highly individualized process" that considers "all relevant and available clinical signs and laboratory findings," symptoms, and various factors' effect on functioning. 20 C.F.R. § 404.1520a(c)(1). The written decision of the ALJ must "incorporate the pertinent findings and conclusions based on the technique;" more specifically, the decision "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairments(s)" and "include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c)." 20 C.F.R. § 404.1520a(e)(2). Those functional areas are: "activities of daily

living; social functioning; concentration, persistence, or pace; and episodes of decompression." 20 C.F.R. § 404.1520a(c)(3).

The ALJ concluded that Plaintiff's depression was not a "severe" impairment. (Tr. 18). In his written decision, the ALJ discussed Plaintiff's significant medical history, including the reports of Drs. Baker and Collins and the DDS consultants' opinions as to his functional capacity. (Tr. 18, 21). The ALJ defined a severe impairment as "significantly limit[ing] an individual's physical or mental ability to do basic work activities." (Tr. 18). The ALJ then found that Plaintiff's congenital deformity with below-the-knee amputation at the age of two was a "severe" impairment, Plaintiff's hypothyroidism was a "non-severe" impairment, and Plaintiff's depression was not a "severe" impairment. (Id.). The Court finds this sufficient under 20 C.F.R. § 404.1520(a)(e). See Aplet v. Sec. of Health & Human Serv., 1992 WL 348948, *6 (6th Cir. 1992) (ALJ's finding, "claimant did not have an impairment or impairments which significantly limited her ability to perform basic work related functions, and therefore did not have a severe impairment," sufficient under 20 C.F.R. § 404.1520a).

Furthermore, there is sufficient evidence in the record for the ALJ to conclude that Plaintiff's depression was not a severe impairment. Plaintiff's own accounts to Dr. Baker of his stabilization without the need for medication, (Tr. 178, 182), and the DDS consultants' evaluations of Plaintiff as "somewhat depressed" but without significant limitations in his adaption abilities, ability to understand and remember, ability to sustain concentration and persistence, and social interaction, (Tr. 205, 207, 217, 219) constitutes evidence sufficient to sustain the ALJ's findings under the standard of review here.

  B. *The ALJ did not consider specific factors when evaluating Plaintiff's credibility, per 20 C.F.R. § 404.1529 and SSR 96-7p*

-9-

Plaintiff argues that the ALJ gave only two reasons for rejecting Plaintiff's subjective testimony and did not consider the specific factors required by 20 C.F.R. § 404.1529 and S.S.R. 96-7p. 20 C.F.R. § 404.1529 sets forth how the Agency evaluates medical symptoms, including pain. See 20 C.F.R. § 404.1529. In evaluating pain, an ALJ will "consider all of the available evidence, including [a plaintiff's] history, the signs and laboratory findings, and statements from [plaintiff], [plaintiff's] treating or nontreating source, and other medical opinions." 20 C.F.R. § 404.1529(c)(1). S.S.R. 96-7p states that an ALJ's determination of credibility of a Plaintiff's allegations of pain "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p (1996).

This Court agrees with the magistrate's determination that the ALJ reviewed and considered all of the available evidence when he determined, "the medical records of evidence do not support the degree of pain alleged." (Doc. No. 24, at 11-12; Tr. 21). In making this assessment, the ALJ cited Plaintiff's own testimony as to his subjective level of pain, Dr. Baker's opinions regarding the potential alleviation of Plaintiff's pain with a proper-fitting prosthesis, and Plaintiff's answers on a pain questionnaire. (Tr. 21). These constitute specific findings under S.S.R. 96-7p. The ALJ has supported his findings of credibility with substantial evidence and "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." See Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997).

C.  *The magistrate judge did not set forth the facts or summarize the evidence in his Report*

Plaintiff objects that the magistrate did not author an independent summary of the evidence in his Report. (See Doc. No. 25, at 3). Rather, the magistrate adopted the ALJ's summary of the evidence and stated: "[a]ccordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments." (Doc. No. 24, at 3). After a full review of the record, this Court set forth a summary of the evidence, *supra*.

IV. **CONCLUSION**

The Court does not find merit in Plaintiff's objections because there is substantial evidence in the record to support the ALJ's decision that Plaintiff is not disabled under 42 U.S.C. § 423(d)(1)(A). Therefore, Plaintiff's Motion is **DENIED** and the Court **ADOPTS** the magistrate judge's Report in its entirety.

This Order terminates this Court's jurisdiction over this action and the case is **DISMISSED**.

It is so ORDERED.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

-11-

Case 3:07-cv-00481  Document 27  Filed 01/05/10  Page 11 of 11 PageID #: 115